# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN RAY BRUMMETT, JR., | Case No. 1:22-cv-00407-ADA-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| ALLISON, *et al.*, | (ECF No. 10) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Melvin Ray Brummett, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action under 42 U.S.C. § 1983. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 10.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as

1

1 true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, where the events in the first amended complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Kathleen Allison, Secretary of Corrections, CDCR; (2) Stuart Sherman, Warden, SATF; (3) D. Lopez, Correctional Lieutenant ("Lt."), SATF; (4) K. Haddock, Correctional Sergeant ("Sgt."), SATF; (5) L. Para, Correctional Sgt., SATF; (6) V. Diaz, Correctional Officer ("C/O"), SATF; (7) D. Escalera, C/O, SATF; (8) C. Hyatt, C/O, SATF; and (9) A. Licea, C/O, SATF. All Defendants are sued in their individual capacities.

Plaintiff alleges as follows:

All Defendants named in the complaint either directly acted with deliberate indifference to Plaintiff's health and safety, or they refused to act knowing that their actions and the actions of others under their supervision were putting Plaintiff's health and safety at an extreme risk.

All named Defendants had a callous, sadistic, and malicious state of mind, and their intentional actions and inactions were the actual and proximate cause of Plaintiff having become infected with the COVID-19 disease.

All of these Defendants knew that Plaintiff was at high risk because of his known medical conditions. The Facility-F Correctional Lt. D. Lopez, Correctional Sgts. K. Haddock and L. Para, and the Building 1 C/Os V. Diaz, D. Escalera, A. Licea, and C. Hyatt all were made aware of Plaintiff's being high risk by medical. These correctional officials were given a list of all those

2

inmates who were "high risk" and needed to be moved. Plaintiff was informed by both medical and his Building 1 C/Os that he was on the list to be moved, due to his dyspnea and asthma. Some of these inmates at high risk were slowly being moved, but Plaintiff was not moved. Plaintiff still is in the high risk medical group because of his "chronic medical conditions" which require daily use of inhalers and medication.

Plaintiff alleges that the California Department of Corrections and Rehabilitation ("CDCR") and SATF, and each of the named correctional officials personally knew, and were informed by both the Centers for Disease Control ("CDC") and the California Department of Health ("CDH") that the Coronovirus Pandemic ("COVID-19") was a deadly and highly contagious disease, and that it had a high fatality rate, and those Defendants still intentionally infected as many inmates as possible.

Plaintiff's claims for relief are solely based on conditions of confinement and should be analyzed under that standard, as those are the only issues Plaintiff has exhausted.

Claim One: Intentionally Exposing Plaintiff to an Inmate Infected with COVID-19 who was Quarantined and in Isolation

An inmate named D. Trejo, who was infected with COVID-19, was housed in Building 1 in A Section under quarantine and in isolation. Inmate Trejo was allowed out of his cell by the building's C/Os, Defendants Hyatt, Diaz, Licea, and Escalera, to work with other uninfected Inmate Porters, and was being allowed to serve Plaintiff his meals, which caused Plaintiff to be exposed just to be able to eat his meals.

The uninfected Porters were coming back into the uninfected sections after having been exposed, further exposing Plaintiff and others to COVID-19. Plaintiff personally questioned all of the above-named C/Os, and every one of them made the same statement: "They did not see anything wrong with letting (Trejo) out to work with other uninfected porters." (ECF No. 1, p. 7.) After being told this by these C/Os, Plaintiff approached one of the Inmate Advisory Counsel ("IAC") members, Mark Ortega, and informed him what was said and asked him if he would go verify what was stated to Plaintiff. Inmate Ortega, who was also concerned about Inmate Trejo being allowed out to work, went and talked to Defendant C/O Hyatt. Inmate Ortega came back

3

1 and informed Plaintiff that Defendant Hyatt had also told him that he did not see anything wrong
2 with letting Trejo out of isolation to work with other uninfected porters.
3    Plaintiff then immediately took his complaints to both the second and third watch
4 Correctional Sgts., Defendants Haddock and Para.  Both of these Correctional Sgts., who were
5 those C/Os' supervisors, flat out refused to correct the dangerous situation.  Plaintiff's verbal
6 communication required these two Sgts. to exercise their authority and take the needed
7 investigation, and if necessary, to rectify the offending life-threatening conditions being caused
8 with deliberate indifference to the health and safety of Plaintiff by their subordinate C/Os.  These
9 Sgts. had the power to act, and they were sufficiently informed with enough advance notice to
10 correct and prevent the substantial risk of serious harm to Plaintiff having to be repeatedly
11 exposed to the deadly disease.
12    <u>Claim Two: Infected Inmates were Being Intentionally Moved into Uninfected 8-Man</u>
13 <u>Cells, Thereby Infecting the Entire Cell</u>
14    All inmates were being tested on Tuesdays, and Defendant Warden Sherman was ordering
15 mass bed moves to be done on Wednesdays and Thursdays, thereby moving inmates who were
16 known to be infected with COVID-19 into those uninfected 8-man enclosed crowded cells.  This
17 was the direct cause of all of the uninfected inmates in those cells having become infected.  These
18 moves were being done intentionally in order to mass infect Plaintiff and other inmates, thereby
19 placing Plaintiff's life in danger.
20    On or about 11/10/2020, everyone was tested for COVID-19.  Then on 11/11/2020 and
21 11/12/2020, Defendant Sherman ordered mass bed moves.  Then on or about 11/17/2020,
22 everyone was tested for COVID-19, then on 11/18/2020 and 11/19/2020, Defendant Sherman
23 ordered mass bed moves.  Once again on or about 11/24/2020, everyone was tested for COVID-
24 19, then on 11/25/2020 and 11/26/2020, Defendant Sherman once again ordered mass bed moves.
25 This institution was receiving both state and federal funding for every inmate who was infected,
26 and therefore that funding was the moving factor for intentionally infecting Plaintiff and other
27 inmates.  These moves were only stopped due to public outcry and complaints from inmates'
28 family, because of the deaths which resulted at San Quentin from the mass moves.

      The Building 1 C/Os, Defendants Diaz and Escalera, on or about 11/16/2020, had Inmate Leo Rodriguez, who they knew was COVID-19 positive, moved from Cell 36 to Cell 17, where Plaintiff was housed, thereby infecting the entire cell. Inmate Rodriguez, even after it was known he was positive, remained in Plaintiff's cell for 4 days prior to being moved to the gym for quarantine and isolation on 11/20/2020.

      <u>Claim Three: Plaintiff was Continuously Exposed to COVID-19 Because He Could Not Safely Social Distance Because of a Severely Overcrowded Facility-F</u>

      Due to the fact that Facility-F was severely overcrowded, Plaintiff was unable to social distance, which was a factor that caused Plaintiff to become infected with COVID-19. The cell population was decreased on Facility-F some time in the months of March and April 2020, because about 97 inmates were moved to Old Corcoran as emergency transfers in order to reduce overcrowding. However, not more than 60 days later, the 8-man cells were filled right back up in disregard for Plaintiff's health and safety.

      The cells were designed to house only 4 inmates, but were housing 8 inmates, double the designed capacity. Moreover, all 8 men were housed in an area which was approximately 18 feet by 18 feet. There were approximately 950 inmates housed on Facility-F, which was designed to house only 528 inmates.

      The cells were ordered to be filled back up by Defendant Sherman, in known disregard for Plaintiff's health and safety. This was done with deliberate indifference to Plaintiff's health and safety.

      The extreme overcrowding placed Plaintiff at an extensive risk of contracting COVID-19, which was the cause of numerous inmate deaths. Plaintiff did become infected with COVID-19. It can be inferred by the actions of Defendant Sherman, by his moving inmates to Old Corcoran as emergency transfers, that he knew that the overcrowding posed an immediate risk to all inmates' health and safety.

      <u>Claim Four: The Warden Intentionally Exposed Plaintiff's Facility-F and Building to COVID-19 When He Ordered Building 1 Section A to be Turned into Quarantine and Isolation for Infected Inmates from another Facility, Thereby Infecting the Entire Facility-F</u>

On or about 9/3/2020, Defendant Sherman had Facility-F, Building 1, Section A turned into a quarantine and isolation facility for inmates who had become infected on another facility. Facility-F was uninfected until these infected inmates were moved to Facility-F. This was yet another factor which caused Plaintiff to become intentionally and continually exposed to COVID-19 and it put Plaintiff's health and safety in grave danger. This was done in known disregard for Plaintiff's health and safety, and was done with deliberate indifference to Plaintiff's health and safety.

<u>Claim Five: Correctional Officials Refused to Wear Their Mandated Face Masks and Thereby Intentionally Exposed Plaintiff to COVID-19 When They Became Infected</u>

Defendant Correctional Lt. Lopez refused to wear his mandated face mask and therefore refused to enforce the mandated orders to wear face masks. Defendant Lopez was reprimanded several times for not wearing his face mask by Correctional Captain J. Kuhn, which resulted in Defendant Lopez being ordered to find another position off of Facility-F. The last time Defendant Lopez was reprimanded it was in front of the program office. Plaintiff personally heard Captain J. Kuhn telling Defendant Lopez that she told him twice to wear his face mask and therefore, he could either suffer a disciplinary write up or could find some place else to work. Less than two weeks later, Defendant Lopez was no longer assigned to Facility-F. Captain J. Kuhn was enforcing the Memorandum dated 10/27/2020, which made Defendant Lopez subject to progressive discipline. (*See* Exhibit C, at ECF No. 1, p. 27.)

Because these C/Os, named below, as well as the staff cooks were the only ones that were working on Facility-F during the pandemic, they were the only ones who could infect inmates. It was therefore vital to protect the health and safety of Plaintiff and all other inmates that they would wear their face masks at all times.

These C/Os had constant and ongoing daily contact with Plaintiff, and many of them had become infected and were not allowed to work, which was not immediately detected until the next day after becoming infected because the COVID-19 tests were not rapid tests at that time. The C/Os who contracted COVID-19 were: C/O N. Johnson, who Plaintiff had contact with due to his job assignment; Defendant C/O V. Diaz, who Plaintiff had direct daily contact with because

6

he was Plaintiff's building officer; C/O Sanchez, who Plaintiff had some contact with because he was the S&E for Facility-F; and Defendant Sgt. K. Haddock, who Plaintiff also had some contact with several times.[1]  These correctional officials refused to wear their mandated face masks because Defendant Lopez refused to enforce the wearing of face masks, thereby putting Plaintiff's health and safety at grave risk of possible death.

Defendant Lt. Lopez was directly responsible for the above-named C/Os not wearing their mandated face masks.  Plaintiff personally talked to Defendant Lopez several times regarding these complaints, which Defendant Lopez refused to enforce.  Defendant Lopez flat out refused to correct the fact that his subordinates refused to wear their mandated face masks even though it was his responsibility and he had the authority to rectify the life threatening conditions.  Defendant Lopez generated and signed a Memorandum on September 7, 2020, attached as Exhibit E, that clearly demonstrates his deliberate indifference to the health and safety of inmates and his refusal to protect inmates from COVID-19.

<u>Claim Six: The Totality of All of These Deliberate and Intentional Actions of These Defendants Created an Environment that Constituted Cruel and Unusual Punishment and was Deliberately Indifferent to Plaintiff's Health and Safety</u>

None of the unconstitutional conditions above served any legitimate penological purpose, and there is not any justification for repeatedly and intentionally exposing Plaintiff to COVID-19, which was done with deliberate indifference to Plaintiff's health and safety.

Furthermore, these Defendants violated evolving standards of decency that mark the progress of a maturing society, which has already been demonstrated by the outcry of today's society.  This would not be tolerated to subject any inmate to these deliberate conditions the way Plaintiff has been intentionally and with deliberate indifference subjected.

The totality of these conditions of which Plaintiff complains are extremely unconstitutional standing alone, but in combination they put Plaintiff's health and safety in continuous threats of contamination from COVID-19.  The end result was that Plaintiff became

---

[1] Plaintiff has not named C/O N. Johnson or C/O Sanchez as defendants to this action, therefore the Court does not consider any potential claims that may be raised against them.

1  infected and deathly sick from the disease.

2  <u>Claim Seven: The Secretary of the California Department of Corrections and
3  Rehabilitation, Defendant Allison, Implemented the Policy of Mass Inmate Moves Which
4  Directly Played a Part in the Violation of Federal Laws</u>

5  Defendant Secretary Allison was the final policy-making authority who set in place a
6  policy that resulted in the deaths of numerous inmates, and was the direct cause of numerous
7  other inmates state-wide, like Plaintiff, becoming infected with COVID-19.  Defendants Allison
8  and Sherman's actions were the direct cause of Plaintiff becoming infected with COVID-19.

9  At all times mentioned these named Defendants were both the actual and the proximate
10 cause of Plaintiff's injuries and his ongoing continuous pain and suffering.  COVID-19 affected
11 Plaintiff more extensively because of his chronic medical conditions, which affected Plaintiff's
12 breathing.  Plaintiff still suffers from severe side effects after having been intentionally infected
13 with COVID-19, significantly affecting his daily activities even now.  Plaintiff now suffers from
14 even more severe migraine headaches, worsened dyspnea, severe body pain, worsened heart
15 burn and acid reflux, stomach pain, and defecation five to six times a day which is causing
16 hemorrhoids and pain for wiping.  Plaintiff has for the past year been tested because of his
17 stomach pain and defecating five to six times a day, with negative results so far.

18 <u>Request for Relief</u>

19 As relief, Plaintiff seeks compensatory, punitive, and future damages, as well as a
20 preliminary injunction.  Plaintiff states that he is more concerned with Defendants putting
21 mandatory procedures in place that will be implemented and to change the policy of placing
22 infected inmates on uninfected facilities, which causes the disease to spread to the uninfected
23 facility.

24 **III.    Discussion**

25     **A.    Federal Rule of Civil Procedure 8**

26 Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim
27 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations
28 are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Plaintiff's complaint is neither short nor a plain statement of his claims. Many of Plaintiff's allegations are purely conclusory or speculative, and do not state what happened, when it happened, or who was involved. General assertions regarding the failure of defendants to comply with certain prison guidelines are not sufficient, and Plaintiff may not merely state the elements of each cause of action without providing factual allegation in support of his claims. Further, the Court is not required to accept legal conclusions, supported only by conclusory statements, as true. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

**B.    Linkage**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint again lumps many or all defendants together in his allegations. While Plaintiff attempts to allege that each and every Defendant knew certain information or acted intentionally with respect to the allegations in the first amended complaint,

9

these conclusory allegations are insufficient to link most of the named Defendants to actions or omissions that may have violated Plaintiff's rights.

### C. Supervisory Liability

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff attempts to hold Defendant Lopez liable for the actions of his subordinates because Defendant Lopez refused to enforce mask mandates when violated by certain correctional officers. However, Defendant Lopez cannot be held liable for the actions or omissions of his subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). While he may have been made aware of the officers' failure to comply with the masking policy, and refused to enforce that policy, that does not allow Plaintiff to hold him liable for the actions of individual officers.

///

**D.     Challenge to Prison Policy**

It appears the primary "policy" Plaintiff complains of relates to mass bed moves of inmates. Plaintiff alleges that Defendants Allison and Sherman set in place and implemented this policy, which resulted in the deaths of numerous inmates and caused Plaintiff to become infected with COVID-19. Assuming that such a policy exists, and that Plaintiff is entitled to raise such a claim against defendants sued only in their individual capacities, Plaintiff has failed to allege facts demonstrating that the policy itself is unconstitutional on its face or that it is a repudiation of Plaintiff's constitutional rights.

          1.     <u>Facial Challenge</u>

A constitutional challenge to a policy is "'facial' [if] it is not limited to plaintiff['s] particular case, but challenges application of the law more broadly. . . ." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (facial challenges "reach beyond the particular circumstances of these plaintiffs.") Facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [policy] would be valid. The fact that the [policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Here, Plaintiff has not alleged sufficient facts demonstrating that implementation of a policy of mass bed moves of inmates would always violate the Eighth Amendment, no matter which inmates or institutions the policy was applied to. Plaintiff alleges in a conclusory fashion that pursuant to the policy, all inmates were tested for COVID-19 on Tuesdays, and the mass bed moves were conducted on Wednesdays and Thursdays, causing inmates known to be infected with COVID-19 to be moved into cells with uninfected inmates, and that this was done intentionally to mass infect Plaintiff and other inmates. Plaintiff provides no factual support for the conclusion that infected inmates were intentionally moved to cells with uninfected inmates or that Defendants intended to cause widespread infections in order to obtain additional state or federal funding.

11

As Plaintiff has not included allegations that the policy would be unconstitutional as applied in all situations, Plaintiff has not pled a cognizable claim against Defendants Allison or Sherman, in their individual capacities, that the mass bed move policy is facially invalid under the Eighth Amendment.

        b.  <u>As Applied Challenge</u>

"'[A] [policy] . . . may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question.'" *Little v. Streater*, 452 U.S. 1, 16 (1981) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Thus, to support an "as applied" challenge, Plaintiff must show that his individual circumstances make the general application of the NDPF policy unconstitutional. *See Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005).

Here, Plaintiff alleges that Defendants Allison and Sherman directly implemented the mass bed move policy, placing Plaintiff at serious risk of contracting COVID-19, and causing Plaintiff to contract COVID-19. However, Plaintiff has not alleged any facts to support his conclusory allegation that the policy itself placed Plaintiff at serious risk of contracting COVID-19. In the first amended complaint, Plaintiff identifies numerous points of contact with other inmates or staff through which he speculates he contracted COVID-19, none of which are related to the mass move policy. For example, Plaintiff also alleges that he was exposed to COVID-19 when: (1) an infected inmate was permitted to work with uninfected inmate porters who then returned to uninfected sections; (2) Plaintiff was unable to social distance in an overcrowded facility and cell; (3) the Warden turned another building and section in the facility where Plaintiff was housed into a quarantine and isolation for infected inmates; and (4) correctional officers refused to wear mandated face masks.

Second, Plaintiff's allegation that Defendants Sherman and Allison are well aware of, and are completely disregarding, the excessive risk to Plaintiff's health and safety is also a conclusory statement unsupported by any facts. Plaintiff alleges that "all of these Defendants knew that Brummett was at high risk because of his known medical conditions," and that Defendants Lopez,

Haddock, Para, Diaz, Escalera, Licea, and Hyatt "were made aware of Brummett's being high risk by medical." (ECF No. 10, p. 6.)  Although Plaintiff was informed by medical and Building 1 C/Os Diaz, Escalera, Licea, and Hyatt that he was on the list of high risk inmates to be moved, "for what ever reason Brummett was not ever moved." (*Id.*)  None of these allegations demonstrate that Defendants Allison and Sherman, in their individual capacities, were personally made aware of a non-speculative, specific risk to Plaintiff's health and safety as a result of the policy.  Therefore, Plaintiff has not adequately pled that Defendants Allison or Sherman knew of and disregarded an excessive risk of serious harm to Plaintiff's health and/or safety by implementing the policy.

Accordingly, Plaintiff has not pled a cognizable claim against Defendants Allison and Sherman, in their individual capacities, that, as applied to Plaintiff, the mass move policy is invalid under the Eighth Amendment.

### E. Eighth Amendment – Deliberate Indifference to Conditions of Confinement

Plaintiff is attempting to bring a conditions of confinement claim regarding the spread of COVID-19 due to overcrowded conditions and movement of inmates.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc).  Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834.  "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted).  Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted).  Prison officials act with deliberate

indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837–45.

COVID-19 poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a cognizable Eighth Amendment claim, Plaintiff must provide more than generalized allegations that the "medical staff" and "correctional officers" have not done enough regarding overcrowding or prison movement or housing assignment to control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison); *Benitez v. Sierra Conservation Ctr., Warden*, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and recommendation adopted, No. 1:21-CV-00370 NONE BAM (PC), 2021

WL 4593841 (E.D. Cal. Oct. 6, 2021) (Failed to state a claim on allegations that overcrowding/lack of distance between inmates has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other conditions.); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and recommendation adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022) (in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and any other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread).

The Court notes that overcrowding, by itself, is not a constitutional violation. *Doty v. County of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248–49 (noting that overcrowding itself not Eighth Amendment violation but can lead to specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *see Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348–49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. *See Balla*, 869 F.2d at 471; *see, e.g.*, *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Plaintiff alleges that overcrowding has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other problems. The

1    Court recognizes that "[p]risons present unique concerns regarding the spread of this virus; by

2    their very nature, prisons are confined spaces unsuited for 'social distancing.'" *Evdokimow v.*

3    *Doll*, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021). Nevertheless, CDC

4    guidelines specifically contemplate that individuals will be confined within prisons during the

5    duration of this pandemic. *See* Guidance for Correctional & Detention Facilities, Centers for

6    Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-

7    ncov/community/correction-detention/guidance-correctional-detention.html (updated November

8    29, 2022; last visited December 21, 2022).

9        The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living

10   conditions, which he alleges were overcrowded, among other issues, are sufficient to satisfy the

11   objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of

12   serious harm." The pertinent question in determining whether Plaintiff states a claim is whether

13   defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is

14   not whether the defendants perfectly responded, complied with every CDC guideline, or whether

15   their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded

16   reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis.

17   Jan. 5, 2021); *accord Benitez, v. Sierra Conservation Center*, 1:21-CV-00370 BAM (PC), 2021

18   WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-

19   BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and recommendation

20   adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022)

21   (same).

22       Plaintiff alleges that many measures were implemented in order to protect inmates from

23   the risks of contracting COVID-19, including quarantine isolation designations, testing, housing

24   movement, and the distribution of personal protective equipment. Plaintiff primarily challenges

25   the movement of infected inmates between infected and uninfected areas, overcrowding of cells,

26   correctional officers refusing to wear face masks, and inability to social distance. However,

27   Plaintiff alleges in only a conclusory fashion that any of these issues personally affected him.

28   ///

The actions of Defendants, to the extent Plaintiff is alleging that each and every Defendant was involved in these decisions, may not have been effective or a "perfect response," but Plaintiff does not adequately allege that they were deliberately indifferent to the spread of the disease. The numerous efforts undertaken demonstrate that Defendants were engaged in active conduct to manage the spread of the virus. Even if the response at SATF has been inadequate, "it has not disregarded a known risk or failed to take any steps to address the risk." *Wilson*, 961 F.3d at 843 (6th Cir. 2020); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and recommendation adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022) (failure to state a claim where defendants were trying "alternatives" to manage the situation.); *Benitez, v. Sierra Conservation Center*, 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same).

However, Plaintiff alleges that on November 16, 2020, Defendants Diaz and Escalera, who knew Inmate Leo Rodriguez was COVID-19 positive, moved Inmate Rodriguez to Plaintiff's cell, and that even after it was known that Inmate Rodriguez was positive, he remained in Plaintiff's cell for four days before being moved to quarantine and isolation on November 20, 2020. At the pleading stage, the Court finds that Plaintiff states a cognizable claim against Defendants Diaz and Escalera for deliberate indifference to conditions of confinement.

### F. Prison Regulations

Plaintiff also alleges violations of various mandates to wear face masks and of CDC guidance regarding social distancing. To the extent that Plaintiff attempts to bring any claims solely based on a defendant's violation of prison rules and policies, he may not do so, as alleged violations of prison rules and policies do not give rise to a cause of action under § 1983. Section 1983 provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for

violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983.

### G. Injunctive Relief

Plaintiff requests that the Court issue a preliminary injunction requiring Defendants to put mandatory procedures in place that will be implemented and to change the policy of placing infected inmates on uninfected facilities.

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

The injunctive relief sought in this action is not narrowly drawn, and appears to extend much further than necessary to correct the harm identified, particularly as it applies to institutions where Plaintiff is not housed and to inmates who are not parties to this action.

### IV. Conclusion and Recommendation

Based on the foregoing, the Court finds that Plaintiff's first amended complaint states a cognizable claim against Defendants V. Diaz and D. Escalera for deliberate indifference to conditions of confinement in violation of the Eighth Amendment for moving an inmate they knew was infected with COVID-19 into Plaintiff's cell and leaving him in Plaintiff's cell for four days

before moving him to quarantine and isolation.

The Court further finds that Plaintiff's first amended complaint fails to state any other cognizable claims against any other defendants. Despite being provided the relevant pleading and legal standards, Plaintiff has not been able to cure the deficiencies. Therefore, further leave to amend is unwarranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY ORDERED as follows:

1. This action proceed on Plaintiff's first amended complaint, filed July 25, 2022, (ECF No. 10), against Defendants V. Diaz and D. Escalera for deliberate indifference to conditions of confinement in violation of the Eighth Amendment; and
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\* \* \*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 22, 2022**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE